IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS BENIPAYO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., et al.,<br><br>    Defendants. | Case No. 15-md-02672-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

This case arises from Volkswagen's evasion of United States and California emissions standards by equipping "clean diesel" vehicles with hidden defeat devices that gamed emissions testing procedures. The majority of the civil suits against Volkswagen were resolved by a pair of settlements (the "Class Settlements") approved by this Court. Plaintiffs in this case are ten opt-outs bringing state common law and statutory claims against Volkswagen Group of America, Inc. ("Volkswagen America") and Volkswagen Aktiengesellschaft ("Volkswagen Germany," collectively, "Volkswagen"). See, e.g. Clendenen Amended Compl. (MDL dkt. 6462) ¶ 3. Volkswagen has moved for summary judgment on Plaintiffs' Song-Beverly Consumer Warranty Act and Consumers Legal Remedies Act claims. See generally Mot. (Clendenen dkt. 14).[1] Because Plaintiffs cars were merchantable despite the presence of the defeat devices, Volkswagen's motion for summary judgment on the Song-Beverly Act claims is granted. At this

---

[1] A since-resolved technical problem forced Volkswagen to file its motion for summary judgment on the docket for Clendenen v. Volkswagen Group of America, Inc., No. 18-cv-07040-CRB, one of the individual cases at issue here. Other relevant documents were filed in the multi-district litigation docket, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, No. 15-md-02672-CRB. This Order indicates which docket court filings appear on by specifying that the docket is either "Clendenen" or "MDL."

stage of the proceedings, there is a genuine issue of material fact over whether the Class Settlements constituted an appropriate correct offer under the CLRA, and Volkswagen has waived its argument that it did not receive proper notice of Plaintiffs' claims for damages under the CLRA. Volkswagen's motion for summary judgment on Plaintiffs' CLRA damages claims is therefore denied. Plaintiffs' request for injunctive relief under the CLRA is moot, so Volkswagen's motion for summary judgment on those claims is granted.

## I. BACKGROUND

This Court has previously described the events that are the basis for Plaintiffs' claims:

> Over the course of six years, Volkswagen sold nearly 500,000 Volkswagen– and Audi-branded TDI "clean diesel" vehicles, which they marketed as being environmentally friendly, fuel efficient, and high performing. Consumers were unaware, however, that Volkswagen had secretly equipped these vehicles with a defeat device that allowed Volkswagen to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures. Specifically, the defeat device produces regulation-compliant results when it senses the vehicle is undergoing testing, but operates a less effective emissions control system when the vehicle is driven under normal circumstances. It was only by using the defeat device that Volkswagen was able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its TDI diesel engine vehicles. In reality, these vehicles emit nitrogen oxides ("NOx") at a factor of up to 40 times over the permitted limit.

In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 15-md-02672-CRB (JSC), 2016 WL 6248426, at *1 (N.D. Cal. Oct. 25, 2016). The scandal led to numerous government actions and over a thousand civil lawsuits, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation. Id. at *2.

Several of the government actions resulted in guilty pleas, consent orders, and consent decrees relevant here. Volkswagen's Federal Trade Commission Consent Order enjoins it from selling, leasing, marketing, or advertising any vehicle with a defeat device, Partial Stipulated Order for Permanent Injunction and Monetary Judgment ("FTC Consent Order") (MDL dkt. 2104) at 11, and its First and Second Partial Consent Decrees with the EPA prohibit it from selling TDI vehicles without an approved emissions modification (AEM) and disclosures approved by the EPA and CARB, First Partial Consent Decree (MDL dkt. 2103-1) App'x A § 7.2.3 & 7.2.4, App'x

B § 7.2.4; Second Partial Consent Decree (MDL dkt. 3228-1) App'x A § 11.2.3. The Plea Agreement that resolved the criminal case against Volkswagen promised that neither it, its officers, directors, employees, or agents would "make any public statement" contradicting its guilty plea. Mot. Ex. DD (Clendenen dkt. 14-32) ¶ 14.A.

The bulk of the civil actions were resolved in two settlements (one concerning 2.0-liter TDI vehicles and another for 3.0-liter TDI vehicles) approved by this Court. See generally In re: Volkswagen, 2016 WL 6248426; 3.0-Liter Class Action Settlement Approval Order (MDL dkt. 3229). The 2.0-Liter Class Settlement offered the owners of TDI diesel vehicles their choice of two remedies. Volkswagen would either buy their cars back at the pre-defeat device value or fix their cars with an emissions modification. In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 2016 WL 6248426, at *4. Lessees similarly had two options. Volkswagen would let them cancel their leases with no penalty or fix their vehicle. Id. Both owners and lessees were entitled to cash restitution on top of their choice of remedy. Id. Former owners who sold their vehicle before June 28, 2016, were entitled to at least $2,550 in cash restitution. Amended Consumer Class Action Settlement Agreement Ex. 3 (MDL dkt. 1685-3) at 8–9. The 3.0-Liter Class Settlement offered a similar deal. All owners had the option of receiving a free repair, an extended emissions warranty, and cash restitution. See generally Amended 3.0-Liter Class Action Settlement Agreement Ex. 2 (MDL dkt. 2894-2). Both settlements required class members to release all claims arising from the emissions scandal. In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 2016 WL 6248426, at *25; 3.0-Liter Class Action Settlement Approval Order at 13–14. Volkswagen has allowed opt-outs to participate in the Class Settlements despite having opted out. Monahan Decl. (Clendenen dkt. 14-2) ¶ 60.

Plaintiffs Richard and Virginia Ortiz currently own a 2.0-liter TDI diesel vehicle. Mot. Ex. G (Clendenen dkt. 14-9). Plaintiff Scott Salzer used to own a 2.0-liter TDI diesel vehicle. Mot. Ex. S (Clendenen dkt. 14-21) at 82:19–21, 85:10–21. Plaintiff Julia Robertson leased a 2.0-liter TDI vehicle for three years, beginning in September 2013. Mot. Ex. N (Clendenen dkt. 14-16). Plaintiffs Byron Clendenen, Kenneth and Maria Coon, and Luke and Kathryn Sanwick currently own 3.0-liter TDI diesel vehicles. Mot. Ex. A (Clendenen dkt. 14-3);

1  Mot. Ex. C (Clendenen dkt. 14-5); Mot. Ex. T (Clendenen dkt. 14-22). Plaintiff Timothy Riley
2  used to own a 3.0-liter TDI diesel vehicle. Mot. Ex. M (Clendenen dkt. 14-15).

All ten Plaintiffs opted out of the applicable Class Settlement. See Mot. Exs. W, X, Y, Z, AA, BB, and CC (Plaintiffs' opt-out notices) (Clendenen dkt. 14-25–14-31). They have each brought fraud claims and claims under California's Song-Beverly Act. See, e.g. Clendenen Amended Compl. Every plaintiff but Riley has also brought a claim under the CLRA. See, e.g. id.; Mot. at 3 n.1. Volkswagen has moved for summary judgment on just the statutory claims. See generally Mot.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case "under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party will have the burden of proof at trial, it must affirmatively show that no reasonable jury could find other than in the moving party's favor. Id. at 331 (Brennan, J., dissenting).

Once the moving party meets its initial burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal quotation marks and citations omitted). Because the court has no obligation to "scour the record in search of a genuine issue of triable fact," the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." Kennan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to raise a genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. Anderson, 477 U.S. at 250. In determining whether there is a genuine issue for trial, the court does not weigh the evidence,

assess the credibility of witnesses, or resolve issues of fact. Id. at 249.

III. DISCUSSION

    A.     **Song-Beverly Consumer Warranty Act**

The Song-Beverly Act provides consumers with a right of action for breaches of the implied warranty of merchantability, which guarantees that goods will "(1) [p]ass without objection in the trade under the contract description," "(2) [a]re fit for the ordinary purposes for which such goods are used," "(3) [a]re adequately contained, packaged, and labeled," and "(4) [c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a), (d). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 26 (Cal. Ct. App. 2007). Simply showing that a product "did not precisely fulfill the expectation of the buyer" does not satisfy this standard. Am. Suzuki Motor Corp. v. Super. Ct., 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995). The implied warranty of merchantability "provides for a minimum level of quality," and is breached only when goods lack "even the most basic degree of fitness for ordinary use." Birdsong v. Apple, Inc., 590 F.3d 955, 958 (9th Cir. 2009) (internal citations and quotation marks omitted).

As applied to automobiles, the implied warranty of merchantability will be breached by "a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." Am. Suzuki, 37 Cal. App. 4th at 1296. This does not mean that an automobile is merchantable so long as it is capable of "provid[ing] transportation from point A to point B." Isip, 155 Cal. App. 4th at 27. Vehicles must also be "in safe condition and substantially free of defects." Id. Defects that render a car unsafe or particularly unpleasant to drive, but not inoperable, may nonetheless violate the warranty of merchantability. See id. ("A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."); Brand v. Hyundai Motor Am., 226 Cal. App. 4th 1538, 1547 (Cal. Ct. App. 2014) (jury could reasonably infer that the implied warranty of merchantability was violated by "a vehicle sunroof that opens and closes on its own" because that defect "creates a substantial safety

1  hazard").

2  There is no genuine dispute that Plaintiffs' cars were merchantable. Plaintiffs claim their vehicles were defective because they contained defeat devices that allowed Volkswagen to evade California and U.S. emissions standards. Opp'n (Clenenden dkt. 24) at 9–10. But the defeat devices and increased emissions did not render Plaintiffs' cars inoperable, pose an immediate danger to Plaintiffs, their passengers, or anyone else, or affect the cars' performance in any way Plaintiffs were aware of before the emissions scandal came to light. See Mot. Ex B (Clendenen dkt. 14-4) at 297:23–298:10, 298:14–22; Ex. E (Clendenen dkt. 14-7) at 70:5–21, 108:13–18, 282:13–23; Ex. I (Clendenen dkt. 14-11) at 82:4–24; Ex. L (Clendenen dkt. 14-14) at 159:6, 160:17; Ex. P (Clendenen dkt. 14-18) at 72:21–25, 227:4, 256:16–21; Ex. S at 82:8–12, 125:25–126:12; Ex. U (Clendenen dkt. 14-23) at 160:11–22, 178:7–16, 247:19–23; Ex. V (Clendenen dkt. 14-24) at 211:1–3, 261:20–22, 265:17–20. The defects in this case are therefore unlike those that previous courts have found sufficient to render a car unmerchantable. See, e.g. Brand, 226 Cal. App. 4th at 1547 (defective sunroof increased the danger of a crash); Isip, 155 Cal. App. 4th at 27 (car was unmerchantable because it stank, lurched, and emitted smoke); Salas v. Toyota Motor Sales, U.S.A., Inc., No. CV 15-8629 FMO (EX), 2017 WL 11247885, at *4 (C.D. Cal. Sept. 29, 2017) (persistent "stench" could have rendered car unmerchantable). The defeat device and higher emissions are akin to a defect which required more frequent refueling but did not otherwise "implicate the [car's] operability." Troup v. Toyota Motor Corp., 545 F. App'x 668, 669 (9th Cir. 2013). The Ninth Circuit has held in an unpublished disposition that that defect, which "did not compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range," did not constitute a breach of the warranty of merchantability as a matter of law. Id.

Plaintiffs' arguments to the contrary are not well-taken. First, they argue that their "cars did not function as clean-diesel, low emissions vehicles, which was their ordinary use." Opp'n at 10–11. This defines the relevant "ordinary use" too specifically, especially in light of caselaw holding that a car's ordinary use is transportation. See Am. Suzuki, 37 Cal. App. 4th at 1296.

Second, Plaintiffs point to the implied warranty of merchantability's requirement that

6

goods "[c]onform to the promises or affirmations of fact made on the container or label," Cal. Civ. Code § 1791.1(a)(4), and argue that "[t]he statements made in the labels provided on the vehicles regarding emissions were . . . patently false." Opp'n at 11. But the heart of the merchantability inquiry is fitness for use, not conformity to labeling, and courts have held that mislabeling alone cannot render a product unmerchantable. See, e.g. Thomas v. Costco Wholesale Corp., No. 12-CV-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) ("Mislabeling of a product is not the sort of 'fundamental defect' that the implied warranty of merchantability is designed to protect against.").

Courts have similarly rejected arguments akin to Plaintiffs' theory that a car that does not meet emissions standards set by law is by definition unmerchantable or necessarily fails to meet a "minimum level of quality." Opp'n at 11; see also Thomas, 2014 WL 5872808, at *3 (rejecting argument that a product was not merchantable because it "could not be legally sold or held"); Swearingen v. Amazon Pres. Partners, Inc., No. 13-CV-04402-WHO, 2014 WL 3934000, at *1 (N.D. Cal. Aug. 11, 2014) (holding allegations that a product was "illegal" insufficient to allege that it "lack[ed] even the most basic degree of fitness for ordinary use"). Plaintiffs attempt to distinguish these cases by pointing out that they involved food products. Opp'n at 8–9. But they do not explain why the principle that regulatory violations do not necessarily establish unmerchantability should not apply more generally.[2] A product may be used even if it violates regulatory requirements. Given the merchantability inquiry's focus on fitness for ordinary use, it makes sense that a regulatory violation is not dispositive of merchantability. This does not mean that a legal violation could never make an automobile unmerchantable. If, for example, a car could not legally be driven because it was not in compliance with applicable regulations, it would be effectively inoperable and might therefore be unmerchantable. But that was not the case here. Even after the defeat devices came to light, Plaintiffs' vehicles remained legal to drive. Mot. Ex. ZZ (dkt. 14-54) at 2.

---

[2] At least one court has reached a similar result in the automobile context. See Amata v. Toyota Motor Sales, U.S.A., Inc., No. EDCV 12-00168-VAP (SPx), 2013 WL 12248140, at *7 (C.D. Cal. Apr. 29, 2013) (vehicle was not "unfit for ordinary use," even though its "rear license plate [was] not illuminated, as required by law").

7

Finally, Plaintiffs argue their cars were not "safe" because they emitted increased levels of chemicals harmful to human health. Id. at 11. Previous cases finding that unsafe defects rendered a car unmerchantable have involved an increased risk of immediate injury, not generalized environmental harms. See, e.g. Brand, 226 Cal. App. 4th at 1547. That makes sense. A car that cannot be driven without an unreasonable risk of preventable injury may not safely transport the driver to their destination and is likely not to be driven at all. It thus implicates the core question regarding a vehicle's merchantability: Whether or not the car provides reliable transportation. Increased emissions do not implicate the ability to provide transportation.

Because there is no genuine dispute that the Plaintiffs' cars were merchantable, Volkswagen's motion for summary judgment as to Plaintiffs' Song-Beverly Act claims is granted. It is therefore unnecessary to decide whether Plaintiffs are entitled to revocation under that law. See Mot. at 20–22, Opp'n at 12–14.

## B.  Consumers Legal Remedies Act

Volkswagen argues that it should be granted summary judgment on Plaintiffs' claims for damages under the CLRA because it made each of them an appropriate correction offer, Mot. at 25–29, and Plaintiffs failed to provide the required statutory notice, id. at 22–24. It also argues Plaintiffs' claims for injunctive relief under the CLRA must be dismissed because Plaintiffs' lack Article III standing to seek injunctive relief, the request for injunctive relief is moot, and Plaintiffs have an adequate remedy at law. Id. at 29–30.

### 1.  Correction Offer

California Civil Code § 1782(b) provides that "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." Volkswagen argues that the Class Settlements constituted an appropriate correction offer to each of the Plaintiffs,[3] foreclosing damages claims under the CLRA.[4]

---

[3] Besides Riley, who has not brought a CLRA claim. Mot. at 13 n.6.
[4] Volkswagen also believes the Class Settlements satisfy the requirements of California Civil Code 1782(c), a similar provision which applies to CLRA class actions. This is not a class action, so the application of section 1782(c) is beside the point.

8

As a preliminary matter, Plaintiffs assert that under California Civil Code § 1784, Volkswagen can only benefit from a correction offer if the alleged CLRA violations were "not intentional and resulted from a bona fide error." Opp'n at 26. The problem with this theory is that section 1784 announces a separate defense with different requirements from the section 1782 defense Volkswagen is asserting.[5] Compare Cal. Civ. Code 1784, with Cal. Civ. Code 1782(b). It does not announce additional requirements for the section 1782 defense. This is confirmed by the fact that cases applying the section 1782 defense have not required a showing of good faith. See generally, e.g. Benson v. Southern Cal. Auto Sales, Inc., 239 Cal. App. 4th 1198 (Cal. Ct. App. 2015).

The parties also disagree over whose place it is to determine that an appropriate correction offer has been made. Plaintiffs seem to suggest that if there is any dispute as to the "appropriateness" of an offer, that determination must be made by a jury. Opp'n at 23–24. But a California Court of Appeals decision holds that "the determination of appropriateness of a correction offer under the CLRA should be left to the trial court's discretion." Benson, 239 Cal. App. 4th at 1207. At least one unpublished California appellate decision has cited this language as establishing that this is "a legal question that must be decided by the trial court." Duran v. Quantum Auto Sales, Inc., No. G052968, 2017 WL 6333871, at *17 (Cal. Ct. App. Dec. 12, 2017). Plaintiffs' authorities, on the other hand, are orders on motions to dismiss CLRA damages claims under section 1782(b). They establish only that the court could not determine whether an appropriate correction had been made at the pleading stage. See In re MacBook Keyboard Litig., No. 5:18-cv-02813-EJD, 2019 WL 6465285, at *10 (N.D. Cal. Dec. 2, 2019); Luong v. Subaru of Am., Inc., No. 17-cv-03160-YGR, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018); In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig., 890 F. Supp. 2d 1210, 1218 (C.D. Cal. 2011).

The dispositive question, then, is whether the Class Settlements constitute an appropriate

---

[5] Volkswagen's motion for summary judgment does cite section 1784 once. Mot. at 25. Volkswagen's reply clarifies that this solitary reference to section 1784 was a typo. Reply at 13 n. 11.

9

correction offer.[6] This question presents a genuine dispute of material fact which the Court cannot resolve at this stage of the litigation. Plaintiffs make three arguments that the Class Settlements were not appropriate correct offers. First they point out that the Class Settlements would have required them to release other, non-CLRA claims. Opp'n at 24–25. Some (but not all) courts have held that "a correction offer cannot require the consumer to release claims that would not otherwise be barred under section 1782." See, e.g. Valdez v. Seidner-Miller, Inc., 33 Cal. App. 5th 600, 615 (Cal. Ct. App. 2019); but see Benson, 239 Cal. App. 4th at 1211 (holding that trial court did not abuse its discretion by holding that a correction offer was appropriate even though it required plaintiff to release "nine different versions of the same cause of action"). Second, Plaintiffs suggest that the Class Settlements were inadequate because "each consumer would receive only a portion of their vehicle purchase price." Opp'n at 25. Third, Plaintiffs argued that the Class Settlements offered remedies "subject to Volkswagen's unilateral determination based on subjective criteria." The Court cannot evaluate these points without weighing the evidence and determining issues of fact, which would be inappropriate on a motion for summary judgment. Anderson, 477 U.S. at 250.

However, given Benson's direction that this issue should be decided by the Court, it appears that it would be appropriate for the Court to determine whether the Class Settlements constituted appropriate CLRA correction offers after the close of evidence and with the benefit of an advisory jury verdict, pursuant to Federal Rule of Civil Procedure 52(a)(1).

### 2. Notice

Plaintiffs who bring a claim for damages under the CLRA must first provide the defendant with notice of the alleged violation, and "[d]emand that the [defendant] correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" of the CLRA. Cal. Civ. Code § 1782(a). Notice must "be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the [defendant's] principal

---

[6] Plaintiffs do not deny having received these offers in compliance with section 1782(b)'s requirements. See Opp'n at 23–26.

place of business within California" at least thirty days before the claim for damages is filed. Id. § 1782(a).

The Court need not decide whether Plaintiffs failed to satisfy this requirement, as Volkswagen argues, because Volkswagen has waived its objection to the sufficiency of notice. Most courts agree that challenges to the sufficiency of section 1782 notice can be waived when the defendants explicitly indicate they recognize the relevant communication as section 1782(a) notice, despite any ostensible deficiencies. See, e.g. Outboard Marine Corp.v. Sup. Ct., 52 Cal. App. 3d 30, 41 (Cal. Ct. App. 1975) (notice waived by communication stating that the defendant was treating the letter it had received "as a preliminary notice and demand under California Civil Code 1782a"), abrogated by statute on other grounds as stated in Flores v. Southcoast Auto. Liquidators, Inc., 17 Cal. App. 5th 841, 851 (Cal. Ct. App. 2017); Jones v. Porsche Cars N. Am., Inc., No. CV 15-5766-GW(SSX), 2015 WL 11995257, at *4 (C.D. Cal. Oct. 15, 2015) (notice waived by communication stating that defendants had received letter "that purports to serve as a notice and demand under the [CLRA]"); but see Shein v. Canon U.S.A., Inc., No. CV 08-07323 CAS (Ex), 2009 WL 3109721, at *6 (C.D. Cal. Sept. 22, 2009) (holding that objections to the adequacy of CLRA notice cannot be waived).

That is exactly what happened here. According to its own exhibits, Volkswagen responded to the Plaintiffs' CLRA letters with a CLRA correction offer. Mot. Exs. NN, OO, PP (dkt. 14-42, 14-43, 14-44). None of those responses stated that Volkswagen considered the CLRA letters inadequate. See id. This undisputed record evidence shows that Volkswagen treated Plaintiffs' letters as CLRA notice and gave Plaintiffs no reason to believe it would later challenge the sufficiency of that notice. This response meets Outboard Marine's standard of "conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief it has been relinquished." 52 Cal. App. 3d at 41.

Volkswagen's failure to raise its objection to the sufficiency of notice in its reply to Plaintiffs' CLRA letters is particularly troubling because if it had raised the issue sooner, Plaintiffs could have re-noticed Volkswagen immediately, well before this case went to trial. By waiting to raise the issue with Plaintiffs, Volkswagen created a situation where the typical remedy for

inadequate notice, dismissal with leave to amend after proper notice is sent, would have required a continuance of trial and inconvenient delays for the parties and the Court.[7] Morgan v. AT&T Wireless Services, Inc., 177 Cal. App. 4th 1235, 1261 (Cal Ct. App. 2009) (inadequate CLRA notice requires only dismissal of the CLRA damages claim, without prejudice, "until 30 days or more after the plaintiff complies with the notice requirements").

### 3. Injunctive Relief

"Claims for injunctive relief become moot when the challenged activity ceases if subsequent events have made it clear that the alleged violations could not reasonably be expected to recur." Ruiz v. City of Santa Maria, 160 F.3d 543, 549 (9th Cir. 1998) (internal quotation marks and citations omitted). That is the case here. Plaintiffs request an injunction directing Volkswagen to "disclose fully, prior to the sale or lease, the inherent engine defects in vehicles equipped with the TDI engine with a defeat device . . . and desist from selling these vehicles with the foregoing pre-sale disclosure" and "to prevent Volkswagen from refusing to acknowledge its scheme to intentionally defraud consumers, including Plaintiff[s], and the California CARB." Clendenen Amended Compl. ¶ 151. This injunction is entirely unnecessary in light of Volkswagen's FTC Consent Order, First and Second Partial Consent Decrees with the EPA, and Plea Agreement. Those orders, decrees, and agreements already prevent Volkswagen from engaging in such misbehavior. See FTC Consent Order at 11; First Partial Consent Decree App'x A § 7.2.3 & 7.2.4, App'x B § 7.2.4; Second Partial Consent Decree App'x A § 11.2.3; Mot.

---

[7] Volkswagen argues that inadequate notice requires dismissal with prejudice, citing a line of authority tracing back to Outboard Marine's direction that section 1782(a)'s requirements be given "literal application." See Trabakoolas v. Watts Water Techs., Inc., No. 12-CV-01172-YGR, 2012 WL 2792441, at *7 (N.D. Cal. July 9, 2012) (collecting cases). Some cases conclude that a "literal application" of section 1782(a) requires dismissal with prejudice when the notice requirements are not satisfied. Id. But after Morgan, the weight of persuasive precedent, including in this district, takes that case's approach of dismissal without prejudice. See, e.g. Romero v. Flowers Bakeries, LLC, No. 14-cv-05189-BLF, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015) ("Courts in this District have determined that it is consistent with California law and with the purposes of the statute to dismiss a CLRA claim for damages without prejudice to amending once a plaintiff can demonstrate compliance with the notice requirements."). And it is not at all clear that Outboard Marine requires dismissal with prejudice. The CLRA claims in that case were not dismissed, because the defendant waived its challenge to notice. Outboard Marine, 52 Cal. App. 3d at 41. It may well be that courts have read too much into Outboard Marine's dicta, and that post-Morgan there is no split of California authority—just a California Court of Appeals decision endorsing dismissal without prejudice in these circumstances.

Ex. DD ¶ 14.A.

Plaintiffs only reply[8] is that "Volkswagen has [not] completely and definitely addressed the defects identified in plaintiffs' CLRA claims, and that the AEM [does not] cure[ ] the defects in the vehicles." Opp'n at 29. They offer no evidence or explanation for this claim, and thus fail to meet their burden of showing a genuine issue of material fact. Anderson, 477 U.S. at 250.

Because mootness is an adequate reason to grant Volkswagen summary judgment on Plaintiffs' request for injunctive relief, it is unnecessary to consider the parties' other arguments on this issue.

## IV. CONCLUSION

For the foregoing reasons, Volkswagen's motion for summary judgment is denied in part and granted in part.

**IT IS SO ORDERED.**

Dated: February 4, 2019



CHARLES R. BREYER
United States District Judge

---

[8] To the extent Plaintiffs rely on Louis Freeh's report, and its claims that Volkswagen is misleadingly selling its cars as "certified pre-owned," see Opp'n at 30, that report is inadmissible and this Court has already rejected the relevance of such claims to this proceeding, Order on Discovery Letter Brief (MDL dkt. 6973) at 2.